Jeffrey Scott Ranen (SBN: 224285)
J.Scott.Ranen@Goliath-Law.com
**GOLIATH LAW**
8605 Santa Monica Blvd.
No. 584066
West Hollywood, CA 90069
Telephone: (213) 789-6549

Attorney for Plaintiff
ALEXIS RIVERA

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXIS RIVERA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>O'REILLY AUTO ENTERPRISES LLC., and DOES 1 - 10,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. DISCRIMINATION ON THE BASIS OF DISABILITY;<br><br>2. FAILURE TO ACCOMMODATE DISABILITY;<br><br>3. FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS;<br><br>4. DISABILITY RETALIATION<br><br>5. WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY;<br><br>6. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.<br><br>**DEMAND FOR A JURY TRIAL** |

Plaintiff ALEXIS RIVERA (hereinafter "Plaintiff") complains and alleges against Defendant O'REILLY AUTO ENTERPRISES LLC. (hereinafter "Defendant") as follows.

**INTRODUCTION**

1.     In a span of four loyal years, Plaintiff Alexis Rivera's professional journey with Defendant O'Reilly Automotive Inc. unfolded as a dedicated employee met with unrelenting adversity. Swiftly rising from a part-time sales associate to General Manager, Mr. Rivera's commitment was unmistakable. In light of Mr. Rivera's dedication and years of loyal service, his

1
COMPLAINT FOR DAMAGES

health challenges became a point of contention when he temporarily left his position to undergo medically necessary surgeries. Unfortunately, Mr. Rivera's leave of absence triggered a cascade of discriminatory actions from management, leading to unwarranted scrutiny and, ultimately, his unjust termination.

**PARTIES, JURISDICTION, AND VENUE**

2.    Plaintiff is a resident of the State of California, and at all times relevant to this complaint worked for Defendant in Kings County.

3.    Defendant is a Delaware Limited Liability Company with its principal place of business in Missouri.

4.    This litigation is a civil action over which this Court has original diversity jurisdiction pursuant to 28 U.S.C. §1332(a)(2) based on diversity of the parties and the amount in controversy. The amount in controversy in this matter exceeds $75,000.

5.    Venue is properly set in this District pursuant to 28 U.S.C. §1391(b) since Defendant transacts business within this judicial district. Likewise, a substantial part of the events giving rise to the claim occurred within this judicial district.

6.    Consistent with the Due Process Clause of the Fifth and Fourteenth Amendments, the Court has personal jurisdiction over Defendant, because Defendant is present in the State of California, such that requiring an appearance does not offend traditional notions of fair play and substantial justice. Further, Defendant has maintained registered agents in the State of California.

7.    The true names and capacities, whether individual, corporate, associate or otherwise, of Defendant DOES 1 through 50, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff will amend this Complaint by inserting the true names and capacities of each such Defendants, with appropriate charging allegations, when they are ascertained. Plaintiff is informed and believes and thereon alleges that each of the Defendants designated herein as "DOE" is responsible in some manner for the injuries suffered by Plaintiff and for damages proximately caused by the conduct of each such Defendants as herein alleged.

/ / /

/ / /

2

COMPLAINT FOR DAMAGES

## FACTUAL BACKGROUND

8.    In May 2005, several years before joining Defendant, Mr. Rivera endured significant health complications arising from a poorly performed surgery, resulting in an extended coma due to severe sepsis infection. Post-coma, Mr. Rivera grapples with persistent health challenges and is vulnerable to overexertion due to the impact on his compromised abdomen and the extensive scar tissue. Having undergone more than eleven surgeries since then, he still contends with the enduring effects of his health conditions.

9.    In April 2019, Mr. Rivera joined Defendant as a part-time sales associate in Defendant's Lemoore storefront. Recognizing Mr. Rivera's exceptional skills and dedication, Defendant swiftly increased his role to full-time hours. Within a few months, Mr. Rivera's performance led to a promotion to the position of full-time Retail Sales Supervisor.

10.    In mid-2020, a mere year and a half after initially joining as a part-time employee, Mr. Rivera was elevated to the role of Assistant Store Manager for Defendant's Lemoore location, a testament to his rapid growth and exceptional performance.

11.    By January 2021, Mr. Rivera was elevated to Store Manager in charge of opening Defendant's new Corcoran store.

12.    In 2021, recognizing Mr. Rivera's adept management of higher-volume stores, Defendant strategically relocated him to the position of General Manager for the Lemoore store. Accompanied by a raise in pay, Mr. Rivera swiftly embraced the new role. Throughout his tenure, he consistently demonstrated exemplary dedication and made significant sacrifices to contribute to Defendant's success.

13.    Before the close of 2022, despite the urgent need for surgery to address his health concerns, Mr. Rivera set aside all medical considerations to prioritize his responsibilities as the General Manager of Defendant's Lemoore store. It wasn't until March 2022 that Mr. Rivera proceeded with the surgery, recognizing the pressing nature of the situation.

14.    After his surgery, Mr. Rivera's medical team prescribed a necessary leave of absence to facilitate his recovery. During this period, Mr. Rivera had to undergo bi-weekly follow-ups at the University of San Francisco, necessitating a challenging four-hour commute.

COMPLAINT FOR DAMAGES

Considering Mr. Rivera's extensive scar tissue resulting from previous surgeries, the recovery process was both painful and crucial to ensuring his overall health.

15. In September 2022, while driving home from a follow-up appointment that cleared him to return to work in just two weeks, Mr. Rivera received a call from District Manager Marc Reynoso, who informed him of his removal from the position of General Manager at the Lemoore store due to his extended leave of absence. Expressing frustration during the conversation, Mr. Rivera questioned the decision, as Mr. Reynoso had previously assured him of retaining his role upon his return. Mr. Reynoso contended that Mr. Rivera's prolonged absence had created a strain for the store, prompting his reassignment as Assistant Manager at Defendant's Hanford store. Significantly, in his role as Assistant Manager, Mr. Rivera lost entitlement to bonuses, resulting in a substantial reduction in his overall compensation.

16. Upon assuming the role of Assistant Manager at the Hanford store, Mr. Rivera encountered a conspicuously hostile work environment. Despite expressing his concerns about the heightened stress induced by the relocation and change in title to Mr. Reynoso, he remained largely unresponsive, leaving Mr. Rivera feeling helpless in his new position.

17. On July 5, 2023, facing severe heart palpitations and overall unwellness, Mr. Rivera urgently sought medical attention at Adventist Hospital. Tests revealed high blood pressure and elevated blood sugar levels, leading to a diagnosis of a mini-stroke attributed to heightened workplace stress. Following his diagnosis, Mr. Rivera's primary care physician recommended a necessary leave of absence, citing the direct impact of workplace stress on his physical health. Mr. Rivera obtained approval for the leave and remained on leave until August 30, 2023.

18. During Mr. Rivera's leave of absence, Crystal Boen, Retail Sales Supervisor of Defendant's Hanford store, contacted him. Ms. Boen revealed that General Manager Joe Hickey and Mr. Reynoso were devising a plan to remove Mr. Rivera from the store. In a conversation between Mr. Reynoso and Mr. Hickey, Mr. Reynoso explicitly expressed, "When [Mr. Rivera] gets back, we need to hold him accountable for everything. We need him out of here."

19. Upon learning about the conversation between Mr. Hickey and Mr. Reynoso, Mr. Rivera became anxious about his job security and endeavored to return to work as soon as

4

COMPLAINT FOR DAMAGES

possible. In August 2023, he contacted Defendant's Leave of Absence team, seeking an earlier return to work. During the call, Mr. Rivera explained his anxiety about returning to work and his concern for his job. The Leave of Absence specialist acknowledged that he might be facing retaliation for his disability leave and promptly transferred him to HR, initiating an investigation into the matter.

20.    On August 30, 2023, Mr. Rivera completed all required medical paperwork, confirming his fitness to return to work. Based on a schedule provided by Mr. Reynoso, he began a full-time position at Defendant's Hanford store. However, on September 1, 2023, Mr. Rivera received a call from Defendant's Leave of Absence specialist, informing him that he hadn't been cleared to return to work. This was due to Mr. Reynoso not approving an accommodation requested by Mr. Rivera's doctor, which included having a stool present and avoiding excessive ladder use. As a result, Mr. Rivera was instructed to return home immediately and remained on unpaid leave for an additional two and a half weeks, despite being cleared for full-time work.

21.    Upon returning to work in September 2023, Mr. Rivera observed a noticeable shift in the workplace environment. Mr. Hickey's communication style towards Mr. Rivera became unusually formal to the point where Mr. Rivera questioned whether it was some form of prank. This change in dynamics left Mr. Rivera feeling uncomfortable and as if he was being targeted for having to go on disability leave.

22.    In September 2023, Mr. Rivera was informed that his sales targets had increased significantly, presenting a nearly insurmountable challenge for him to meet the new objectives. It is crucial to highlight that Mr. Rivera was the sole individual in the district subjected to an augmented sales target.

23.    After Mr. Rivera returned from leave, Mr. Hickey noticeably intensified his scrutiny of Mr. Rivera, seemingly intent on finding any pretext to use against him. During a family emergency, Mr. Rivera took a personal call while on duty, requesting a colleague to cover his responsibilities temporarily. In the midst of this, Mr. Hickey confronted Mr. Rivera, raising his voice and reprimanding him for taking the call. Mr. Hickey persisted, insisting on knowing the nature of the call, and Mr. Rivera, under duress, asserted that it was a personal matter.

COMPLAINT FOR DAMAGES

24.    Two days following this incident, Mr. Rivera was issued a written reprimand by Mr. Hickey for a minor data entry error. Throughout Mr. Rivera's four-year term, he had never witnessed anyone being written up for such a data entry mistake

25.    On February 13, 2024, upon returning to the store after a medical visit, Mr. Hickey issued Mr. Rivera a written reprimand. Due to Mr. Rivera's health requirements, he had obtained approval for weekly follow-up appointments with his healthcare providers, which required him to arrive slightly later each Friday. However, Mr. Hickey inaccurately attributed this reprimand to a corporate directive, claiming incomplete paperwork by Mr. Rivera. Upon contacting Defendant's corporate office, Mr. Rivera discovered that the decision to issue the reprimand was solely made by Mr. Hickey and Mr. Reynoso.

26.    On February 16, 2024, after an altercation between two female coworkers, where Mr. Rivera refrained from taking sides, Mr. Hickey unjustly attributed the conflict to Mr. Rivera, using this situation as a fabricated justification for recommending termination.

27.    On February 20, 2024, when Mr. Rivera arrived to work at Defendant's Hanford store, Mr. Reynoso approached Mr. Rivera and notified him that he had been terminated. Notably, Mr. Rivera's termination deviates from standard procedure, as employees typically face termination after accumulating three write-ups.

28.    Despite being a dedicated employee who swiftly ascended to the position of a respected General Manager, Mr. Rivera found himself subjected to discriminatory treatment by District Manager Marc Reynoso and General Manager Joe Hickey. Bearing resentment towards Mr. Rivera for taking medically necessary leaves of absence, Mr. Reynoso and Mr. Hickey subjected him to unwarranted scrutiny, demotion, and ultimately terminated his employment under false pretexts.

29.     Since his termination, Mr. Rivera, who devoted four years of loyal service to the Defendant, has undergone profound emotional distress and depression. Despite his genuine passion for his job, the last months of his employment have inflicted irreversible damage to his physical and mental well-being. Furthermore, Mr. Rivera has endured harm to his reputation, once held in high regard as a well-respected and beloved General Manager.

6
COMPLAINT FOR DAMAGES

30.     On March 16, 2024, Plaintiff filed a charge of disability discrimination with the California Civil Rights Department and received an immediate right to sue notice which is attached to this Complaint as Exhibit "A."

## COUNT ONE

### Discrimination on the Basis of Disability

### (Plaintiff Against Defendant)

31.     Plaintiff realleges and incorporates all of the factual allegations stated above.

32.     At all times relevant to this complaint, Plaintiff was employed by Defendant.

33.     Defendant knew or should have reasonably known that Plaintiff had a history of severe medical complications and disability.

34.     Plaintiff was able to perform all essential functions of his job, either with or without reasonable accommodation for his condition. Until taking disability leave, Plaintiff never received any disciplinary remarks or complaints regarding his performance and found himself swiftly promoted due to his outstanding performance.

35.     Plaintiff was (1) targeted by senior management for taking a medically necessary leave of absence, (2) was demoted while taking a leave of absence, (3) was reprimanded for requesting a reasonable accommodation and (4) was ultimately terminated.

36.     Plaintiff's necessity for surgery and the ensuing recovery period were significant motivating factors leading to Defendants' decision to terminate his employment. The discharge directly resulted from the plaintiff experiencing health issues associated with his known disability.

37.     Defendants' termination of Plaintiff based on his legally protected status has caused Plaintiff damages, including lost wages and emotional distress.

38.     As a direct and proximate result of Defendants' discriminatory actions, Plaintiff has suffered various damages, including economic damages and emotional distress damages, the precise amounts to be proven at trial.

/ / /

/ / /

/ / /

7

COMPLAINT FOR DAMAGES

39.    Defendants' discriminatory actions against Plaintiff based on his disability, culminating in his termination, were carried out by senior management and, as such, constitutes malicious and oppressive conduct perpetrated by senior agents of the company. These actions meet the criteria for punitive and exemplary damages as outlined in Civil Code section 3294

## COUNT TWO

### Failure to Accommodate Disability

### (Plaintiff Against Defendant)

40.    Plaintiff realleges and incorporates all of the factual allegations stated above.

41.    At all times relevant to this complaint, Plaintiff was employed by Defendant.

42.    Defendant knew or should have reasonably known that Plaintiff had a history of severe medical complications. Plaintiff notified Defendant of his disability on numerous occasions.

43.    Plaintiff requested a reasonable accommodation by asking to come into work a little later on Fridays following his medical appointments.

44.    Defendant undertook adverse employment actions against Plaintiff by reprimanding him for his previously approved tardiness and ultimately terminated him.

45.    Plaintiff was able to perform all essential duties of his current position with reasonable accommodation for his disability. Mr. Rivera requested to arrive to work a little later on Fridays to attend follow-up appointments.

46.    Defendants' failure to provide accommodation for Plaintiff's disability has caused Plaintiff to suffer physical, emotional, and economical harm, the precise amounts to be proven at trial.

47.    Defendants' failure to accommodate Plaintiff's disability, culminating in Plaintiff's termination, was carried out by senior management and, as such, constitutes malicious and oppressive conduct perpetrated by senior agents of the company. These actions meet the criteria for punitive and exemplary damages as outlined in Civil Code section 3294.

/ / /

/ / /

8

COMPLAINT FOR DAMAGES

## COUNT THREE

**Failure to Engage in the Interactive Process to Accommodate Disability**

**(Plaintiff Against Defendant)**

48.    Plaintiff realleges and incorporates all of the factual allegations stated above.

49.    At all times relevant to this complaint, Plaintiff was employed by Defendant.

50.    Defendant was aware of Plaintiff's conditions and disability.

51.    Plaintiff requested reasonable accommodation by asking to come in a little later on days where he had to attend follow-up appointments.

52.    Plaintiff was willing to participate in the interactive process to determine whether reasonable accommodation could be made so that he would be able to perform the essential job requirements. Plaintiff consistently communicated with Defendants and explicitly made his request for accommodation known and apparent.

53.    Defendants failed to participate in a timely good-faith interactive process with Plaintiff to determine whether reasonable accommodation could be made. Plaintiff was (1) targeted by senior management for taking a medically necessary leave of absence, (2) was demoted while taking a leave of absence, (3) was reprimanded for requesting a reasonable accommodation and (4) was ultimately terminated.

54.    Defendant could have made a reasonable accommodation by allowing Plaintiff to come into work after his follow-up appointment. Defendants would not have experienced an undue burden by allowing Plaintiff to come in an hour later.

55.    Defendants' failure to engage in a good-faith interactive process has caused plaintiff damages, including lost wages and emotional distress, the precise amounts to be determined at trial.

56.    Defendants' failure to engage in the interactive process regarding Plaintiff's need for accommodation, culminating in Plaintiff's termination, was carried out by senior management and, as such, constitutes malicious and oppressive conduct perpetrated by senior agents of the company. These actions meet the criteria for punitive and exemplary damages as outlined in Civil Code section 3294.

COMPLAINT FOR DAMAGES

## COUNT FOUR

### Disability Retaliation

### (Plaintiff Against Defendant)

57.    Plaintiff realleges and incorporates all of the factual allegations stated above.

58.    At all times relevant to this complaint, Plaintiff was employed by Defendant.

59.    Defendant was aware of Plaintiff's conditions and disability.

60.    Defendant subjected Plaintiff to adverse employment actions because he took time off to care for his disability and medical condition. Defendant retaliated against him by giving him less desirable assignments and ultimately terminating him.

61.     Plaintiff's need to take a leave of absence was a substantial factor in causing Plaintiff harm, including demotions, less favorable assignments, and ultimately termination.

62.    Defendant's adverse employment actions against Plaintiff caused him damages, including lost wages and emotional distress., the precise amounts to be determined at trial

63.    Defendants' discriminatory actions against Plaintiff based on his disability leave and health conditions, culminating in his termination, were carried out by senior management and, as such, constitutes malicious and oppressive conduct perpetrated by senior agents of the company. These actions meet the criteria for punitive and exemplary damages as outlined in Civil Code section 3294.

## COUNT FIVE

### Wrongful Termination in Violation of Public Policy

### (Plaintiff Against Defendant)

64.     Plaintiff realleges and incorporates all of the factual allegations stated above.

65.    At all times relevant to this complaint, Plaintiff was employed by Defendant.

66.    Defendant's actions constitute a violation of the public policy protections set forth in FEHA. Defendant (1) terminated Plaintiff for taking a medically necessary leave of absence, (2) neglected to provide accommodations for Plaintiff's disability, and (3) terminated Plaintiff due to his request for accommodations.

/ / /

10

COMPLAINT FOR DAMAGES

67.     Defendants' decision to terminate Plaintiff was substantially motivated by Plaintiff's protected status in blatant violation of the public policy protections set forth in FEHA.

68.     Defendants' termination of Plaintiff based on his legally protected status has caused him damages, including lost wages and emotional distress., the precise amounts to be determined at trial

69.     Plaintiff's termination, intricately linked to his disability, stands as a clear violation of FEHA protections and stands in stark contradiction to public policies crafted to shield individuals from the detrimental effects of discrimination. Defendants' Senior Management orchestrated Plaintiff's dismissal under a false pretext. These deliberate actions exemplify malicious and oppressive conduct carried out by senior agents of the company, and as such, meet the criteria for punitive and exemplary damages set forth in Civil Code section 3294.

## COUNT SIX

### Intentional Infliction of Emotional Distress

### (Plaintiff Against Defendant)

70.     Plaintiff realleges and incorporates all of the factual allegations stated above.

71.     Defendant's refusal to accommodate the Plaintiff's condition by permitting a slight adjustment to his start time is outrageous conduct.

72.     Defendant acted with reckless disregard of the probability that Plaintiff would suffer emotional distress, knowing that Plaintiff would be present when the conduct occurred.

73.     Plaintiff suffered severe emotional distress, including depression and anxiety.

74.     Defendant's conduct was a substantial factor in causing Plaintiff's severe emotional distress.

75.     Defendants' outrageous conduct was effectuated by Defendant's senior management and, as such, was malicious and oppressive conduct perpetrated by senior agents of the company. These actions meet the criteria for punitive and exemplary damages as outlined in Civil Code section 3294.

/ / /

/ / /

11

COMPLAINT FOR DAMAGES

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

(a)     For general damages, including economic damages (back pay and front pay), emotional distress damages, in an amount be determined at trial;

(b)     For special damages in an amount be determined at trial;

(c)     For exemplary and punitive damages in an amount be determined at trial;

(d)     For reasonable attorneys' fees;

(f)     For pre-judgment and post-judgment interest at the maximum legal rate;

(g)     For a tax consequence neutralization adjustment or "gross up" award to compensate Plaintiff for his increased income tax responsibility following an award of compensatory damages;

(h)     For costs of suit incurred;

(i)     For such other and further relief as the Court deems just and proper.

DATED: March 20, 2024            **GOLIATH LAW**

By: _____
JEFFREY S. RANEN
Attorney for Plaintiff ALEXIS RIVERA

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues and each and every cause of action so triable.

DATED: March 20, 2024            **GOLIATH LAW**

By: _____
JEFFREY S. RANEN
Attorney for Plaintiff ALEXIS RIVERA

12
COMPLAINT FOR DAMAGES

# EXHIBIT A



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

## Civil Rights Department

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

March 16, 2024

Jeffrey Ranen
8605 Santa Monica Blvd. No. 584066
West Hollywood, CA 90069

RE:     **Notice to Complainant's Attorney**
CRD Matter Number: 202403-23997016
Right to Sue: Rivera / O'REILLY AUTO ENTERPRISES LLC

Dear Jeffrey Ranen:

Attached is a copy of your complaint of discrimination filed with the Civil Rights Department (CRD) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, CRD will not serve these documents on the employer.** You must serve the complaint separately, to all named respondents. Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California. A courtesy "Notice of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the CRD does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 02/23)

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency     GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

## Civil Rights Department

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

March 16, 2024

**RE:**   **Notice of Filing of Discrimination Complaint**
CRD Matter Number: 202403-23997016
Right to Sue: Rivera / O'REILLY AUTO ENTERPRISES LLC

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Civil Rights Department (CRD) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

No response to CRD is requested or required.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 02/23)



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

## Civil Rights Department

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

March 16, 2024

Alexis Rivera

,

RE: **Notice of Case Closure and Right to Sue**
CRD Matter Number: 202403-23997016
Right to Sue: Rivera / O'REILLY AUTO ENTERPRISES LLC

Dear Alexis Rivera:

This letter informs you that the above-referenced complaint filed with the Civil Rights Department (CRD) has been closed effective March 16, 2024 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this CRD Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,


Civil Rights Department

CRD - ENF 80 RS (Revised 02/23)

**COMPLAINT OF EMPLOYMENT DISCRIMINATION
BEFORE THE STATE OF CALIFORNIA
Civil Rights Department
Under the California Fair Employment and Housing Act
(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**

Alexis Rivera                                                    CRD No. 202403-23997016

Complainant,

vs.

O'REILLY AUTO ENTERPRISES LLC
,

Respondents

_____

**1.** Respondent **O'REILLY AUTO ENTERPRISES LLC** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

**2**. Complainant **Alexis Rivera**, resides in the City of **,** State of **.**

**3**. Complainant alleges that on or about **February 20, 2024**, respondent took the following adverse actions:

**Complainant was discriminated against** because of complainant's disability (physical, intellectual/developmental, mental health/psychiatric) and as a result of the discrimination was terminated, denied accommodation for a disability, denied family care and medical leave (cfra) related to serious health condition of employee or family member, child bonding, or military exigencies.

**Complainant experienced retaliation** because complainant requested or used a disability-related accommodation and as a result was terminated, denied accommodation for a disability.

**Additional Complaint Details:** 8.     In May 2005, several years before joining Defendant, Mr. Rivera endured significant health complications arising from a poorly performed surgery, resulting in an extended coma due to severe sepsis infection. Post-coma, Mr. Rivera

-1-
*Complaint – CRD No. 202403-23997016*

Date Filed: March 16, 2024

CRD-ENF 80 RS (Revised 12/22)

grapples with persistent health challenges and is vulnerable to overexertion due to the impact on his compromised abdomen and the extensive scar tissue. Having undergone more than eleven surgeries since then, he still contends with the enduring effects of his health conditions.

9.    In April 2019, Mr. Rivera joined Defendant as a part-time sales associate in Defendant's Lemoore storefront. Recognizing Mr. Rivera's exceptional skills and dedication, Defendant swiftly increased his role to full-time hours. Within a few months, Mr. Rivera's performance led to a promotion to the position of full-time Retail Sales Supervisor.

10.    In mid-2020, a mere year and a half after initially joining as a part-time employee, Mr. Rivera was elevated to the role of Assistant Store Manager for Defendant's Lemoore location, a testament to his rapid growth and exceptional performance.

11.    By January 2021, Mr. Rivera was elevated to Store Manager in charge of opening Defendant's new Corcoran store.

12.    In 2021, recognizing Mr. Rivera's adept management of higher-volume stores, Defendant strategically relocated him to the position of General Manager for the Lemoore store. Accompanied by a raise in pay, Mr. Rivera swiftly embraced the new role. Throughout his tenure, he consistently demonstrated exemplary dedication and made significant sacrifices to contribute to Defendant's success.

13.    Before the close of 2022, despite the urgent need for surgery to address his health concerns, Mr. Rivera set aside all medical considerations to prioritize his responsibilities as the General Manager of Defendant's Lemoore store. It wasn't until March 2022 that Mr. Rivera proceeded with the surgery, recognizing the pressing nature of the situation.

14.    After his surgery, Mr. Rivera's medical team prescribed a necessary leave of absence to facilitate his recovery. During this period, Mr. Rivera had to undergo bi-weekly follow-ups at the University of San Francisco, necessitating a challenging four-hour commute. Considering Mr. Rivera's extensive scar tissue resulting from previous surgeries, the recovery process was both painful and crucial to ensuring his overall health.

15.    In September 2022, while driving home from a follow-up appointment that cleared him to return to work in just two weeks, Mr. Rivera received a call from District Manager Marc Reynoso, who informed him of his removal from the position of General Manager at the Lemoore store due to his extended leave of absence. Expressing frustration during the conversation, Mr. Rivera questioned the decision, as Mr. Reynoso had previously assured him of retaining his role upon his return. Mr. Reynoso contended that Mr. Rivera's prolonged absence had created a strain for the store, prompting his reassignment as Assistant Manager at Defendant's Hanford store. Significantly, in his role as Assistant Manager, Mr. Rivera lost entitlement to bonuses, resulting in a substantial reduction in his overall compensation.

16.    Upon assuming the role of Assistant Manager at the Hanford store, Mr. Rivera encountered a conspicuously hostile work environment. Despite expressing his concerns about the heightened stress induced by the relocation and change in title to Mr. Reynoso, he remained largely unresponsive, leaving Mr. Rivera feeling helpless in his new position.

17.    On July 5, 2023, facing severe heart palpitations and overall unwellness, Mr. Rivera urgently sought medical attention at Adventist Hospital. Tests revealed high blood pressure and elevated blood sugar levels, leading to a diagnosis of a mini-stroke attributed to heightened workplace stress. Following his diagnosis, Mr. Rivera's primary care physician recommended a necessary leave of absence, citing the direct impact of workplace stress on

-2-
*Complaint – CRD No. 202403-23997016*

Date Filed: March 16, 2024

his physical health. Mr. Rivera obtained approval for the leave and remained on leave until August 30, 2023.

18.     During Mr. Rivera's leave of absence, Crystal Boen, Retail Sales Supervisor of Defendant's Hanford store, contacted him. Ms. Boen revealed that General Manager Joe Hickey and Mr. Reynoso were devising a plan to remove Mr. Rivera from the store. In a conversation between Mr. Reynoso and Mr. Hickey, Mr. Reynoso explicitly expressed, "When [Mr. Rivera] gets back, we need to hold him accountable for everything. We need him out of here."

19.     Upon learning about the conversation between Mr. Hickey and Mr. Reynoso, Mr. Rivera became anxious about his job security and endeavored to return to work as soon as possible. In August 2023, he contacted Defendant's Leave of Absence team, seeking an earlier return to work. During the call, Mr. Rivera explained his anxiety about returning to work and his concern for his job. The Leave of Absence specialist acknowledged that he might be facing retaliation for his disability leave and promptly transferred him to HR, initiating an investigation into the matter.

20.     On August 30, 2023, Mr. Rivera completed all required medical paperwork, confirming his fitness to return to work. Based on a schedule provided by Mr. Reynoso, he began a full-time position at Defendant's Hanford store. However, on September 1, 2023, Mr. Rivera received a call from Defendant's Leave of Absence specialist, informing him that he hadn't been cleared to return to work. This was due to Mr. Reynoso not approving an accommodation requested by Mr. Rivera's doctor, which included having a stool present and avoiding excessive ladder use. As a result, Mr. Rivera was instructed to return home immediately and remained on unpaid leave for an additional two and a half weeks, despite being cleared for full-time work.

21.     Upon returning to work in September 2023, Mr. Rivera observed a noticeable shift in the workplace environment. Mr. Hickey's communication style towards Mr. Rivera became unusually formal to the point where Mr. Rivera questioned whether it was some form of prank. This change in dynamics left Mr. Rivera feeling uncomfortable and as if he was being targeted for having to go on disability leave.

22.     In September 2023, Mr. Rivera was informed that his sales targets had increased significantly, presenting a nearly insurmountable challenge for him to meet the new objectives. It is crucial to highlight that Mr. Rivera was the sole individual in the district subjected to an augmented sales target.

23.     After Mr. Rivera returned from leave, Mr. Hickey noticeably intensified his scrutiny of Mr. Rivera, seemingly intent on finding any pretext to use against him. During a family emergency, Mr. Rivera took a personal call while on duty, requesting a colleague to cover his responsibilities temporarily. In the midst of this, Mr. Hickey confronted Mr. Rivera, raising his voice and reprimanding him for taking the call. Mr. Hickey persisted, insisting on knowing the nature of the call, and Mr. Rivera, under duress, asserted that it was a personal matter.

24.     Two days following this incident, Mr. Rivera was issued a written reprimand by Mr. Hickey for a minor data entry error. Throughout Mr. Rivera's four-year term, he had never witnessed anyone being written up for such a data entry mistake

25.     On February 13, 2024, upon returning to the store after a medical visit, Mr. Hickey issued Mr. Rivera a written reprimand. Due to Mr. Rivera's health requirements, he had obtained approval for weekly follow-up appointments with his healthcare providers, which required him to arrive slightly later each Friday. However, Mr. Hickey inaccurately attributed

-3-

*Complaint – CRD No. 202403-23997016*

Date Filed: March 16, 2024

CRD-ENF 80 RS (Revised 12/22)

this reprimand to a corporate directive, claiming incomplete paperwork by Mr. Rivera. Upon contacting Defendant's corporate office, Mr. Rivera discovered that the decision to issue the reprimand was solely made by Mr. Hickey and Mr. Reynoso.

26.     On February 16, 2024, after an altercation between two female coworkers, where Mr. Rivera refrained from taking sides, Mr. Hickey unjustly attributed the conflict to Mr. Rivera, using this situation as a fabricated justification for recommending termination.

27.     On February 20, 2024, when Mr. Rivera arrived to work at Defendant's Hanford store, Mr. Reynoso approached Mr. Rivera and notified him that he had been terminated. Notably, Mr. Rivera's termination deviates from standard procedure, as employees typically face termination after accumulating three write-ups.

28.     Despite being a dedicated employee who swiftly ascended to the position of a respected General Manager, Mr. Rivera found himself subjected to discriminatory treatment by District Manager Marc Reynoso and General Manager Joe Hickey. Bearing resentment towards Mr. Rivera for taking medically necessary leaves of absence, Mr. Reynoso and Mr. Hickey subjected him to unwarranted scrutiny, demotion, and ultimately terminated his employment under false pretexts.

29.     Since his termination, Mr. Rivera, who devoted four years of loyal service to the Defendant, has undergone profound emotional distress and depression. Despite his genuine passion for his job, the last months of his employment have inflicted irreversible damage to his physical and mental well-being. Furthermore, Mr. Rivera has endured harm to his reputation, once held in high regard as a well-respected and beloved General Manager.

-4-
*Complaint – CRD No. 202403-23997016*

Date Filed: March 16, 2024

CRD-ENF 80 RS (Revised 12/22)

VERIFICATION

I, **Jeffrey Ranen**, am the **Attorney** in the above-entitled complaint.  I have read the foregoing complaint and know the contents thereof.  The matters alleged are based on information and belief, which I believe to be true.

On March 16, 2024, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Los Angeles, California**

-5-

*Complaint – CRD No. 202403-23997016*

Date Filed: March 16, 2024

CRD-ENF 80 RS (Revised 12/22)